UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| **KENNETH CREAR.** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.1:23 cv 03812-CJN |
| | ) |
| **AMERICAN AIRLINES GROUP INC.** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S SECOND AMENDED COMPLAINT
FOR VIOLATION OF CIVIL RIGHTS**

COMES NOW Plaintiff Kenneth Crear, by and through undersigned counsel, and files this Second Amended complaint for violation of his civil rights as a commercial passenger on American Airlines Flight 2598, specifically 42 U.S.C. § 1981.

**JURISDICTION**

1. The jurisdiction of this Honorable Court is invoked pursuant to:

    a. 28 U.S.C. §§ 1331 and 1332; and

    b. 42 USC § 1981.

**PARTIES**

2. Kenneth Crear ("Crear"), an African-American resident of Las Vegas, Nevada, is a well-established and prominent businessman in the entertainment and other business areas. On the incident date herein, he was a passenger on American Airlines travelling to Washington D.C. for his niece's college graduation from a University located in the therein. Further, he briefly resided in the District following the immediate incident.

3. Defendant, American Airlines Group, Inc., ("AAGI" or "American Airlines"), located at

1

Skyview Drive, Fort Worth, TX 76155, operates, manages, and/or owns an Airline commonly called American Airlines. It operates a legislative office in the District of Columbia Further, American Airlines engages in significant business in the District of Columbia where it sells tickets directly and through travel agents to thousands of D.C. residents and businesses and earns a substantial profit from its sales. It also operates a National Legislative Office in the District of Columbia.

## FACTS COMMON TO ALL CLAIMS

4. At 12:55 PM on May 6, 2021, Crear, a regular first-class passenger, boarded American Airlines Flight 2598 from Las Vegas to Ronald Reagan Airport, to Washington, DC. He was assigned seat 3B, an aisle seat in the third row of the first-class cabin.

5. American Airlines has a "zero-tolerance" anti-discrimination policy that [does] not allow or condone disparate treatment of [its] customers due to race, religion, ethnicity, or other discriminating factors.

6. At all times referenced herein a federally mandated COVID related mask policy was in place. Consistent therewith, American Airlines required all passengers to wear face masks to minimize risks of COVID-19 infections. At all times referenced herein, Crear wore the required face mask.

7. Seated immediately across from Crear during this flight was a Caucasian male passenger – *with no face mask*. That passenger conversed with his fellow passenger and enjoyed his beverages and the benefits and comfort of the first-class cabin, including pleasant interaction and conversation with the Caucasian flight attendant.

8. Before takeoff, the flight attendant asked Crear to lift his mask above the tip of his nose. He complied immediately. She said nothing to the nearby unmasked Caucasian

passenger.

9. Sometime later, the flight attendant instructed Crear to lift his mask above the tip of his nose. He complied immediately. Once again, she said nothing to the nearby unmasked passenger.

10. The flight attendant at no time required the Caucasian passenger seated three feet away directly across the aisle to wear a face mask or engaged in any conversation with him about not wearing one.

11. A short time later, both Crear and his maskless neighbor ordered beverages from the Flight Attendant. In the process of receiving and consuming his beverage the flight attendant publicly and loudly chastised Crear: "I am not going to tell you again about the mask!" It was obviously necessary to temporarily pull down his mask to consume his drink.

12. By comparison, as the flight attendant delivered a beverage to and interacted with the Caucasian passenger who was not wearing a mask at all, she said nothing whatsoever to him. He masklessly continued to enjoy his refreshments, first-class service, and attention without interference.

13. Crear, observing the clear double standard at hand, stated that her tone and rudeness were inappropriate. She replied she would no longer serve him drinks and abruptly snatched the drink previously served from his hands. No words were spoken to his fellow passenger.

14. Crear pointed out to the flight attendant her different treatment of him by comparison to the nearby Caucasian male passenger without any justification whatsoever. She ignored his remarks and still never said a mumbling word to the Caucasian passenger. Rather, she

spoke in an even louder, rude, and condescending manner which caused him considerable embarrassment and humiliated.

15. Crear asked the flight attendant why she repeatedly berated him about his mask while completely ignoring the Caucasian passenger's blatant violation of Defendant's mask mandate.

16. Crear then recorded the Caucasian man across the aisle from him for a full two minutes as he masklessly relaxed, wrote notes, talked to his companion, and enjoyed his beverage. (See drive.google.com/file/d/13AzjIlGtvXXYM_DQmqQB0rX1ZaEEoVRw)[1]

17. The flight attendant's public chastisement, belittling, and different treatment of Crear, including snatching a beverage out of his hands occurred within full view of nearby passengers in the First-Class section.

18. As the flight landed at the Washington, D.C. Airport, an American Airlines official believe to be a Supervisor, confronted Crear and demanded that he not leave the scene and wait before disembarking. He complied. As he stood as ordered, Airline passengers exiting the plan walked past him and stared at him suspiciously as if suspected of committing a criminal offense, thereby aggravating his embarrassment and humiliation.

19. When approached by individuals employed by either American Airline or the Airport, Crear explained the flight attendant stated to him that she "felt threatened," and that supervisors were "*en route*." Crear was stunned.

20. After a 20-25 minute detention, Crear carefully explained the apparent double standard and manner in which he was treated. He also showed airline officials the video recording referenced at paragraph 16. After reviewing it he was released without further

---

[1] / This reference depicts contemporary visual evidence, in part, of the alleged double standard at issue in this case.

questioning. By that time most, if not all, of the passengers on the plane had disembarked. Moreover, none of Defendant's representatives or supervisors uttered a mumbling word of concern or apology to Plaintiff.

21. Plaintiff asserts *respondeat superior*, where appropriate.

22. Plaintiff was embarrassed, humiliated, and emotionally traumatized during his stay in Washington D.C. for his niece's graduation and thereafter including, but not limited to his return on American Airline to Las Vegas.

23. Defendant's intentional, deliberate, and malicious actions were ratified by its management's failure to take any corrective or disciplinary action regarding this incident.

24. There was no apparent reason for Defendant's double standard and hostile treatment singularly of Crear. Reasons given by the airline were pretextual.

25. But for Crear's race, Defendant and its employee would not have imposed a double standard in (a) the different level of scrutiny applied to Crear versus the nearby white male passenger; (b) the monitoring and enforcement of the federal government mask mandate; (c) the monitoring and enforcement of Defendant's mask mandate; (d) the flight attendant's grabbing of Crear's drink from his hand, restricting his consumption, and her interference with first class service accorded to first class passengers – thus his enjoyment of the benefits of his contract with Defendant; (e) experiencing the flight attendant's aggressive, hostile, and demeaning tone in which she spoke to Crear versus the nearly white male passenger in general, as well as regarding the respective mask mandates; (f) the reporting of Crear to Defendant's supervisors (including the pilot of the plane) and/or airport security officials.

26. As the contemporaneously recorded video by Plaintiff shows, the fellow white male passenger seated directly across from Plaintiff was treated differently – pertinent to applicable mask mandates.

## STATEMENT OF CLAIMS

### COUNT I
### RACIAL DISCRIMINATION
### VIOLATION OF 42 U.S.C. § 1981

27. Paragraphs 1-26 are incorporated as if stated more fully herein.

28. 42 U.S.C. §1981 guarantees equal rights under the law to make and enforce contracts without respect to race to include enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

29. Plaintiff entered into a contractual relationship with American Airlines by purchasing a first-class ticket for American Airlines Flight 2598 from Las Vegas to Washington, DC, which included preferential seating and treatment.

30. Defendant, in violation of its own anti-discrimination policy, intentionally, deliberately, and maliciously subjected Crear to a racially sensitive double standard including but not limited to:

    a. Selective imposition of the airline and federal government's mask mandate by way of brusque demands to Defendant about his face mask, despite the lack of similar enforcement of the mandate for the blatantly unmasked Caucasian passenger seated directly next to Crear;

    b. Rude, disrespectful, and condescending conduct, including snatching his beverage away, which culminated in the denial of certain services generally accorded to first-class passengers;

    c. Exaggerating Crear's expression of concerns about her double standard as "threatening" to Airline authorities and reporting him to supervisors and airline security;

  d. The imposition of public, post-flight detention and interrogation by airline supervisory staff and/or airport security.

31. By virtue of its double standard, Defendant deprived Plaintiff of equal treatment in the enjoyment of his contractual travel arrangement on Defendant's airline and to the full and equal enjoyment of the benefits and privileges thereof in violation of 42 U.S.C. § 1981. It further caused him a significant embarrassment, humiliation, and emotional harm.

32. There was no impartial or unbiased reason for Defendant's treatment of Plaintiff. Defendant's ratification, validation, and approval of its employee's actions justify imposition of punitive damages.

33. But for Plaintiff's race he would not have been subject to the aforementioned double standard in treatment referenced in paragraphs 4-26. As the video herein depicts, Plaintiff's fellow maskless male Caucasian passenger, seated directly across from him, experienced completely different scrutiny, treatment, and the enforcement of Defendant's and the federal government's mask mandate.

34. Defendants stated reasons for its different, racially distinct treatment of Plaintiff, is pretextual.

35. Defendant's actions caused Plaintiff considerable embarrassment, humiliation, shame, and mental anguish.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Crear respectfully seeks a judgment declaring that Defendant violated the above-stated civil rights laws, to wit, Title 42 U.S.C. § 1981. Plaintiff seeks the following:

a. Compensatory damages in an amount in excess of $500, 000.00;

b. Punitive damages in an amount in excess of $500,000.00;

c. Reasonable costs and attorney's fees; and

d. Such other relief as this court deems necessary and proper.

**JURY TRIAL DEMANDED**

Respectfully,

*/s/ Donald Temple, Esq.*
DC Bar No. [#408749]
Donald M. Temple, Esq.
DONALD M. TEMPLE, P.C.
2522 B Virginia Ave. NW
Washington, D.C.  20005
Telephone: (202) 628-1101
Facsimile: (202) 628-1149
Email:  dtemplelaw@gmail.com

***Attorney for Plaintiff***