UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KENNETH CREAR,

    *Plaintiff*,

v.

AMERICAN AIRLINES GROUP, INC.,

    *Defendant*.

Civil Action No. 1:23-cv-3812 (CJN)

### ORDER

Kenneth Crear, a black man, alleges that he suffered racial discrimination onboard an American Airlines flight when a flight attendant enforced the then-operative federal mask mandate against him but not a nearby white passenger. *See generally* ECF No. 5 (Compl.). Crear asserts damages claims against the airline's holding company, American Airlines Group, Inc., for violations of 42 U.S.C. § 1981 and Titles II and VII of the Civil Rights Act. *Id.* at 5–10. After American Airlines Group moved to dismiss for lack of personal jurisdiction and failure to state a claim, *see* ECF No. 7 (AAG Mot.), Crear moved to amend his complaint for the second time, *see* ECF No. 13 (Crear Mot.). For the reasons that follow, the Court grants Defendant's motion to dismiss and denies Crear's motion to amend.

**I.  Factual Background**

Crear is a resident of Las Vegas, Nevada. Compl. ¶ 2. On May 6, 2021, he boarded American Airlines Flight 2598 from Henry Reid International Airport in Las Vegas to Ronald

1

Reagan National Airport in Arlington, Virginia.[1]  *Id.* ¶ 4; ECF No. 7-1 (Singleton Decl.) ¶¶ 6–7. American Airlines is owned by American Airlines Group, which—like the airline itself—is a Delaware corporation with its principal place of business in Fort Worth, Texas.  Singleton Decl. ¶¶ 3–4.

Crear was flying first class.  Compl. ¶ 4.  At the time of Crear's flight, federal regulations required commercial airline passengers to wear face masks to minimize the spread of COVID-19. *Id.* ¶ 6.  The regulations also required airline personnel to monitor passengers' compliance with the mask mandate and remind those not wearing masks of their obligation to do so.  *See* 86 FR 8025–8030 (Feb. 1, 2021).

Crear alleges that, while he wore a mask for the duration of the flight, a white male passenger seated directly across the aisle from him never donned any kind of face-covering. Compl. ¶¶ 6–7.  Crear further alleges that, both before and after takeoff, a white flight attendant instructed Crear to "lift his mask above the tip of his nose" but said nothing to the unmasked white passenger a few feet away.  *Id.* ¶¶ 8–10.  On both occasions, Crear alleges, he promptly complied with the flight attendant's request.  *Id.* ¶¶ 8–9.

Crear and the other passenger each ordered beverages from the flight attendant.  *Id.* ¶ 11. According to Crear, as he was "[i]n the process of receiving and consuming his beverage," the flight attendant loudly chastised him, "I am not going to tell you again about the mask!"  *Id.*  She did not, however, say anything to the passenger who was not wearing a mask at all.  *Id.* ¶ 12.  When Crear told the flight attendant that "her tone and rudeness were inappropriate," she informed him

---

[1] In his complaint, Crear incorrectly alleged that the destination of his flight was "Washington, D.C."  Compl. ¶¶ 4, 18.  In his other filings, however, Crear acknowledges that his flight was bound for Ronald Reagan National Airport.  *See* ECF No. 12 (Opp.) at 1; ECF No. 13-1 (SAC) ¶ 4.

that she "would no longer serve him drinks" and "abruptly snatched the drink previously served from his hands." *Id.* ¶ 13. Crear asked the flight attendant why she had "repeatedly berated him about his mask" while "completely ignoring" the unmasked white passenger, but she did not respond. *Id.* ¶ 14–15.

When the plane landed, an American Airlines official approached Crear and instructed him to wait before disembarking. *Id.* ¶ 18. Crear was told that the flight attendant had felt "threatened" by his behavior and that additional supervisors were en route. *Id.* ¶ 19. After waiting on the plane for approximately 25 minutes, Crear explained to airline officials the "double standard manner in which he was treated" and showed them a two-minute-long video he had taken of the unmasked white passenger during the flight. *Id.* ¶¶ 16, 20. At that point, Crear was released without further questioning. *Id.* ¶ 20.

Crear alleges that, "but for [his] race," the flight attendant and American Airlines would not have treated him differently from his "fellow white male passenger." *Id.* ¶¶ 23–24. Crear also alleges that he suffered considerable embarrassment and humiliation as a result of his disparate treatment. *Id.* ¶¶ 14, 18.

**II.    Legal Standard**

When a defendant moves to dismiss for lack of jurisdiction under Rule 12(b)(2), the plaintiff bears the "burden of establishing a factual basis for the court's exercise of personal jurisdiction." *Williams v. Romarm, SA*, 756 F.3d 777, 781, 785 (D.C. Cir. 2014). "[I]n deciding whether to grant [such] motion," "the Court need not confine itself to only the allegations in the complaint, but may consider materials outside the pleadings." *Frost v. Catholic Univ. of Am.*, 960 F. Supp. 2d 226, 231 (D.D.C. 2013) (internal quotation marks omitted).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the plausibility standard, a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although "leave to amend [pleadings] 'shall be freely given when justice so requires,'" a district court may in its discretion deny a plaintiff leave to amend when it is apparent that amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)(2)).

**III.   Analysis**

    **A.   Personal Jurisdiction**

There are two circumstances in which a court may exercise personal jurisdiction over a corporate defendant like American Airlines Group. First, if the court is located in a forum where the corporation is "at home"—i.e., where it is incorporated or has its principal place of business—then the court has "general jurisdiction" over the corporation and may hear any claim against it. *Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2014). Second, if the court is located in a forum with which the corporation has established certain "minimum contacts," then the court may hear specific claims against the corporation that "arise out of or relate to" those contacts. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (internal alterations adopted). For a court's exercise of the latter type of jurisdiction, called "specific jurisdiction," to be "consistent with due process, the defendant's suit-

4

related conduct must create a substantial connection with the forum State."[2] *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

This Court possesses neither general nor specific jurisdiction over American Airlines Group. As to general jurisdiction, the District of Columbia is not the company's place of incorporation or principal place of business, so it is not a viable forum for the airing of "any and all claims" against American Airlines Group. *Daimler*, 571 U.S. at 127; Singleton Decl. ¶ 4. And as to specific jurisdiction, Crear's operative complaint contains no facts indicating a "substantial connection" between the District of Columbia and the discrimination that Crear alleges, other than the incorrect statements that his flight "landed at the Washington, D.C. Airport" and that he was detained there. Compl. ¶¶ 18, 20; Singleton Decl. ¶ 6. As Crear acknowledges, however, his flight landed at Ronald Reagan Washington National Airport, which, while "primarily serv[ing] Washington, D.C., [] is located in the Commonwealth of Virginia." *Powell v. Am. Airlines, Inc.*, 2018 WL 2324087, at *2 (D.D.C. 2018). Any conduct that took place there thus fails to establish jurisdiction in this district. *See e.g.*, *Williamson v. McKinney*, 1988 WL 129807, at *2 (D.D.C. 1988) ("[T]he only allegedly tortious act occurred at National Airport in Virginia; plaintiff cannot salvage his case by premising personal jurisdiction on this theory.").

---

[2] In addition to demonstrating that exercising specific jurisdiction over a defendant does not violate due process, "[a] plaintiff seeking to establish jurisdiction over a non-resident defendant must establish that specific jurisdiction comports with the forum's long-arm statute, D.C. Code § 13–423(a) . . . ." *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1095 (D.C. Cir. 2008). Here, Crear "failed to invoke the long-arm statute or any other statutory basis supporting personal jurisdiction," as was his "responsibility to do." *Id.* But the Court can envision no serious argument that the long-arm statute would apply here, and regardless, as explained below, the exercise of specific jurisdiction over American Airlines Group on the facts of this case would exceed the bounds of the Due Process Clause.

## B. Failure to State a Claim

Even if the Court could exercise personal jurisdiction over American Airlines Group for the claims asserted here, Crear fails to state a plausible claim for relief.

*First*, § 1981 guarantees, among other things, the right of all persons regardless of race to "make and enforce contracts." 42 U.S.C. § 1981(a). To state a claim under § 1981, a plaintiff must plead facts sufficient to show that, "but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). Crear's allegations that a flight attendant enforced the federal mask mandate against him but not an unmasked white passenger seated across the aisle cannot support a claim under § 1981 because, in May 2021, Crear had no "legally protected right" not to wear a mask over his mouth and nose for the duration of his flight. *See* Compl. ¶ 28a; 86 FR 8025–8030, at 8026–8027 (Feb. 1, 2021). Crear's true grievance regarding American Airlines' enforcement of the mask requirement "appears to be the allegation that the flight attendant did not properly perform [her] contract with regard to the other Caucasian passenger." AAG Mot. at 13 n.2. But the fact that American Airlines may have failed to perform its contract with regard to another passenger does not permit Crear to bring a § 1981 claim for treating him in a manner required by federal law.

Crear also alleges that he suffered the loss of a legally protected right on account of his race when, after he told the flight attendant that her "tone and rudeness were inappropriate," she "snatched" his drink away, informed him she would not serve him any more drinks, and then later reported him to airline authorities and caused him to be detained after landing. Compl. ¶¶ 13, 18–19, 28b–d. But even assuming that beverage services and prompt deplaning are rights for which Crear contracted when he purchased a first-class ticket, *see id.* ¶ 7, Crear has not plausibly alleged

6

that his race was the "but-for" cause of their revocation. The relevant question in a § 1981 case is, "what would have happened if the plaintiff had been white?" *Comcast*, 589 U.S. at 333. Here, Crear has not pleaded any facts to indicate that, if a white passenger had similarly confronted a flight attendant about her tone, that passenger would not also have been denied beverage services or detained upon landing. Instead, the "obvious alternative explanation" for the actions American Airlines took against Crear is simply that he engaged in a verbal altercation with a flight attendant—whether justified or not. *Iqbal*, 555 U.S. at 682.

*Second*, Crear also does not state claims for race discrimination under Title II or Title VI of the Civil Rights Act. An aircraft is not a "place of public accommodation" under Title II, as required for relief pursuant to that provision. 42 U.S.C. §§ 2000a(a), (b); *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 139 (D.D.C. 2005). And under Title VI, which applies to entities in receipt of federal funds, an entity's liability is limited to its own misconduct—vicarious liability claims based on the actions of its employees are not supported. *See Arthur v. D.C. Hous. Auth.*, 2020 WL 1821111, at *11 (D.D.C. 2020). Here, however, Crear's Title VI claim is premised on the allegedly discriminatory actions of an American Airlines flight attendant and other "supervisory staff" who were present on the plane.[3] *See* Compl. ¶¶ 23, 36–38. Crear alleges no entity-level policy of discrimination; to the contrary, he asserts that American Airlines maintains a "'zero-tolerance' anti-discrimination policy." *Id.* ¶ 5. Indeed, although American Airlines Group raised these arguments about Title II and Title VI in its motion to dismiss, Crear offered no

---

[3] To the extent Crear alleges discrimination in violation of Title VI based on American Airlines Group's alleged failure to "admonish or discipline" the flight attendant in question, investigate the incident, or respond to emails sent by Crear's counsel, these allegations also do not state a claim for relief. Compl. ¶¶ 37–38, 40. Crear fails to plead facts to suggest that, in allegedly failng to take those actions, American Airlines Group treated him differently from any similarly situated person. *See Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 78 (D.D.C. 2003).

response in his opposition brief and instead indicated his intent to "effectively centraliz[e] his discrimination claim in a single [§ 1981] claim." *See* AAG Mot. at 6–8; Opp. at 3 n.2. Crear has therefore forfeited any argument for his entitlement to relief under the Civil Rights Act.

### C. Motion to Amend

In his proposed second amended complaint, Crear alleges several additional facts that he argues "spell[] out a definitive basis for this [C]ourt's assertion of personal jurisdiction over [American Airlines Group]." Crear Mot. at 4. Crear asserts that American Airlines Group operates a "National Legislative Office in the District of Columbia," and that its subsidiary American Airlines "engages in significant business in the District of Columbia where it sells tickets directly and through travel agents to thousands of D.C. residents and businesses" at a "substantial profit."[4] SAC at ¶ 3. Crear also clarifies that, although American Airlines Flight 2598 was bound for Virginia's Ronald Reagan National Airport, Crear's final destination was the District of Columbia, where he attended his niece's college graduation and "briefly resided" "following the immediate incident." SAC ¶¶ 2, 4.

These additional facts do not supply personal jurisdiction. As to general jurisdiction, that a corporation has an office in a forum does not subject it to jurisdiction on "any and all" claims there. *See, e.g.*, *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017). And as to specific jurisdiction, there is no nexus between Crear's allegations of discrimination and the legislative priorities of American Airlines Group or its sales of tickets to District residents and businesses, as required to make the Defendant amenable to jurisdiction on the specific claims in this case. *See Bristol-Myers Squibb Co.*, 582 U.S. at 262. Finally, it is irrelevant that *Crear* created contacts with the District

---

[4] American Airlines Group asserts that it has no offices or employees in the District of Columbia and that Crear may be "confus[ing]" American Airlines Group with its subsidiary, non-defendant American Airlines. ECF No. 15-1 (Second Singleton Decl.) ¶¶ 4, 6.

of Columbia by traveling there after the incident in question, since "it is the defendant's conduct that must form the necessary connection with the forum [] that is the basis for [the court's] jurisdiction." *Walden*, 571 U.S. at 285.  The Court will accordingly deny Crear's motion to amend as futile.  *See Foman*, 371 U.S. at 182.

### D. Jurisdictional Discovery and Transfer

Crear argues that, if the Court determines it lacks personal jurisdiction over American Airlines Group, it should either permit Crear to take jurisdictional discovery or transfer the case to the Eastern District of Virginia.  *See* Opp. at 10–11.  But Crear has not demonstrated that jurisdictional discovery would have any "likely utility" here.  *Natural Resources Def. Council v. Pena*, 147 F.3d 1012, 1024 (D.C. Cir. 1998).  Because American Airlines Group is not "at home" in the District of Columbia, the only way for Crear to establish personal jurisdiction here would be to show a "substantial connection" between the District and American Airlines Group's alleged conduct.  *Daimler*, 571 U.S. at 137; *Walden*, 571 U.S. at 284.  Where Defendant's relevant conduct involves a flight for a Nevada resident from Nevada to Virginia, there is simply no indication that any such connection could ever emerge.

Finally, while "[a] court may transfer a case to another district even though it lacks personal jurisdiction over the defendant[]," the determination of "whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983); *see also* 28 U.S.C. § 1406(a).  Since Crear has not plausibly alleged any claim for relief, transfer to another federal court is not warranted here. *See Naartex*, 722 F.2d at 789.

## IV. Conclusion

For the reasons set forth above, it is hereby

**ORDERED** that American Airlines Group's Motion to Dismiss, ECF No. 7, is **GRANTED**; and it is further

**ORDERED** that Crear's Motion to Amend, ECF No. 13, is **DENIED.**

This is a final and appealable order.

The Clerk of Court is directed to terminate this case.

DATE: January 6, 2025

_____
CARL J. NICHOLS
United States District Judge